# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40241

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

OSMAN RUTILIO REYES,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

REAVLEY, Circuit Judge:

This Court implicitly held in *United States v. Velasco*, 465 F.3d 633 (5th Cir. 2006), that the Illinois aggravated battery statute is divisible—meaning that if a defendant has a prior conviction under that statute and a sentencing court must determine whether this prior conviction qualifies for a sentencing enhancement, the court should look to certain records of conviction to identify the particular offense of which the defendant had been convicted. Applying *Mathis v. United States*, 136 S.Ct. 2243 (2016), we must decide whether that holding retains vitality. We find that it does.

Recitation of only a few facts is necessary. In April of 2015, defendant Osman Rutilio Reyes was convicted of aggravated battery under Illinois'

No. 16-40241

aggravated battery statute, 720 Ill. Comp. Stat. Ann. § 5/12-3.05.    More specifically, he was convicted of aggravated battery with a deadly weapon under Section 5/12-3.05(f)(1).   Reyes was deported in May of that year.   By August, he was back in the country.   Immigration and Customs Enforcement agents apprehended him in Texas, and he pleaded guilty to violating 8 U.S.C. § 1326.

The district court found that Reyes' prior conviction qualified as a crime of violence for purposes of the United States Sentencing Guidelines and imposed a 16-level sentencing enhancement when calculating the applicable Guidelines range.   *See* USSG § 2L1.2(b)(1)(A)(ii).   This ruling was required by *Velasco*, which had held that a conviction under the Illinois aggravated battery statute for aggravated battery based on the use of a deadly weapon necessarily involved "the use of force" and therefore categorically qualified as a crime of violence.   465 F.3d at 638–40 (citing 720 Ill. Comp. Stat. 5/12–4(b)(1)).   The opinion also recognized that when Illinois' aggravated battery statute cannot be "pare[d] down," a conviction under the statute will *not* categorically qualify as a crime of violence because the "statute provides for the commission of the offense of aggravated battery in a number of different ways, some of which do not require the use of physical force against a person."   *Id.* at 639 (quoting *United States v. Aguilar-Delgado*, 120 F. App'x 522, 523 (5th Cir. 2004)).

Though *Velasco* foreclosed his argument, Reyes duly objected to a crime-of-violence sentencing enhancement on the grounds that the Illinois aggravated battery statute is indivisible.   As that very case shows, a finding of indivisibility would establish the sentencing enhancement's impropriety.   *See Velasco*, 465 F.3d at 639.   On appeal, we consider Reyes' divisibility argument in light of *Mathis*, and review is *de novo*.   *See United States v. Sam*, 467 F.3d 857, 861 (5th Cir. 2006).   Because Reyes is challenging a precedent of this Court, he must show that *Mathis* "unequivocally abrogated" *Velasco*.   *United*

No. 16-40241

*States v. Tanksley*, 848 F.3d 347, 350 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017). *Mathis* "is controlling regarding the methodology of the modified categorical approach," *United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016), so our task is to check the result of *Velasco* according to the method of *Mathis*, *see Tanksley*, 848 F.3d at 351.

The broad issue in this case is whether Reyes' conviction under the Illinois aggravated battery statute properly counts as a crime of violence under the Guidelines. "To determine whether a given prior conviction qualifies for a Guidelines enhancement, courts use either (1) the categorical approach or (2) the modified categorical approach." *United States v. Rico-Mejia*, 859 F.3d 318, 322 (5th Cir. 2017). Courts applying the categorical approach simply "look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted." *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016).

Some statutes resist this approach because they "list elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S.Ct. at 2249. When confronted with such a statute, courts employ the modified categorical approach and examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* Some statutes seem at a glance to bear this same structure but, upon examination, merely list "various factual means of committing a single element." *Id.* When a statute lists different possible ways of committing one crime, the modified categorical approach is impermissible. *Id.* at 2251.

The Illinois aggravated battery statute is lengthy and complex. *See* 720 Ill. Comp. Stat. § 5/12-3.05(a)–(g). According to the government, the statute sets forth the necessary alternative elements that render the modified

3

categorical approach permissible and allow Reyes' prior conviction to be identified as an aggravated battery involving the use of a deadly weapon. *See* 720 Ill. Comp. Stat. § 5/12-3.05(f)(1). According to Reyes, the statute is indivisible and "overbroad" in that it "sweeps in conduct that does not qualify as a 'crime of violence.'" Reyes' fallback position is that even if the aggravated battery statute can be narrowed to Section 5/12-3.05(f), it cannot be narrowed further. In other words, Section 5/12-3.05(f) is itself indivisible and overbroad.

In determining if the aggravated battery statute is divisible, we look to its alternative components and ask "elements or means?" *Mathis*, 136 S.Ct. at 2256. State law governs this "threshold inquiry." *Id.* State courts are the ideal expositors of state law, but we may also examine the statutory text and structure or, if necessary, "the record of a prior conviction itself." *Id.* If the Illinois aggravated battery statute lists various means of committing one *aggravated battery* offense, it is indivisible. *Hinkle*, 832 F.3d at 575. In such a case, a jury need not agree on *how* the offense was committed, and Reyes' crime of conviction could not be narrowed to encompass any one factual theory, no matter the actual evidence or indictment in his case. *Mathis*, 136 S.Ct. at 2251. Elements, by contrast, are those "things the 'prosecution must prove to sustain a conviction.'" *Id.* at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014). Distilled to its essence, *Mathis* recognizes that, when applying a recidivism statute to a defendant's prior convictions, each "crime of conviction" is defined by solely by its elements. *Id.* at 2251. "How a given defendant actually perpetrated the crime" is irrelevant, "regardless of whether a statute omits or instead specifies alternative possible means of commission." *Id.*

We first consider Reyes' broad argument: that the "aggravated battery statute contains [a] lengthy list of *ways* that a person can violate the statute." (Emphasis added (citing 720 Ill. Comp. Stat. § 5/12-3.05(a)–(g)).) Do its many subsections and their nested paragraphs simply establish a multiplicity of

ways of committing one *aggravated battery* offense?  No.  The Supreme Court of Illinois recently analyzed the aggravated battery statute and held that it contained (at least) two different crimes requiring different proofs.[1]  *People v. Cherry*, 63 N.E.3d 871, 877 (Ill. 2016) (discussing aggravated battery and aggravated battery with a firearm).

The Illinois aggravated battery statute sets forth many types of aggravated battery.  It is error to analyze the statute as if it instead establishes a basic aggravated battery offense that is supplemented throughout the rest of the statute by various further-aggravating circumstances.  Thus, in *Cherry*, the Supreme Court of Illinois rejected the appellate court's conclusion that aggravated battery with a firearm was merely "an enhanced version of aggravated battery."  *Id.* (quoting *People v. Cherry*, 22 N.E.3d 1277, 1283 (Ill. App. Ct. 2014)).  And it chided the lower court for "wholly ignor[ing] the actual elements of these offenses."  *Id.*

> [T]he statutory elements plainly demonstrate that, rather than being an aggravated or enhanced version of *aggravated battery*, aggravated battery with a firearm is, like aggravated battery itself, an aggravated or enhanced version of *battery*.  The aggravated battery and aggravated battery with a firearm statutes share an identical structure. Both offenses require the State to prove the commission of a battery, and both offenses require the State to prove the presence of an additional factor aggravating that battery.

*Id.* (emphases added).

*Cherry* thus forecloses Reyes' argument that the entirety of the aggravated battery statute is indivisible.  Accordingly, our focus shifts to one particular subsection, Section 5/12-3.05*(f)*.  Reyes' "crime of conviction" for purposes of *Mathis* is either a Section 5/12-3.05*(f)* violation (*aggravated battery*

---

[1] The code numbers cited herein are different than those referenced in both *Velasco* and *Cherry* because this portion of the Illinois penal code has been renumbered.

No. 16-40241

*based on the use of a weapon or device*) or a 5/12-3.05*(f)(1)* violation (*aggravated battery involving the use of a deadly weapon*).  *See* 136 S.Ct. at 2251.

In its entirety, subsection (f) reads as follows:

Offense based on use of a weapon or device. A person commits aggravated battery when, in committing a battery, he or she does any of the following:

(1)    Uses a deadly weapon other than by discharge of a firearm, or uses an air rifle as defined in Section 24.8-0.1 of this Code.

(2)    Wears a hood, robe, or mask to conceal his or her identity.

(3)    Knowingly and without lawful justification shines or flashes a laser gunsight or other laser device attached to a firearm, or used in concert with a firearm, so that the laser beam strikes upon or against the person of another.

(4)    Knowingly video or audio records the offense with the intent to disseminate the recording.

720 Ill. Comp. Stat. Ann. 5/12-3.05(f).

As can be seen from the statute, if Reyes' crime of conviction is *aggravated battery based on the use of a weapon or device*, then the conviction would not categorically qualify as a crime of violence under the Guidelines; the conviction could be based on wearing a hood while committing a non-violent battery, for instance.  But if the crime of conviction is *aggravated battery involving the use of a deadly weapon* it categorically qualifies as a crime of violence under the Guidelines.  *United States v. Sanchez-Sanchez*, 779 F.3d 300, 305 (5th Cir. 2015).  We must determine the nature of Section 5/12-3.05*(f)*. Do paragraphs (1) through (4) itemize *means* of committing a single crime, or do paragraphs (1) through (4) represent distinct crimes with distinct *elements*? *See Hinkle*, 832 F.3d at 575.

We are aware of no Illinois case describing *aggravated battery based on the use of a weapon or device* as a unitary offense, which offense may be proven by showing that Section 5/12-3.05(f) was violated in any one of four ways

6

enumerated in paragraphs (1) through (4) of that subsection.  *Compare Mathis*, 136 S.Ct. at 2256 (finding the Iowa burglary statute indivisible because of a state supreme court holding that "[t]he listed premises in Iowa's burglary law . . . are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle" (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981))).  But nor can we find cases holding that Section 5/12-3.05(f) describes four different crimes with four distinct sets of elements.  *Compare United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016) (holding that the Texas burglary statute, which describes three forms of burglary, is divisible because the Texas Court of Criminal Appeals had previously held that each "type" of burglary had its own set of elements (citing *Day v. State*, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975))).

There are cases, however, that answer the precise question necessary to resolve this case: whether Section 5/12-3.05(f)(1) is a distinct crime (*aggravated battery involving the use of a deadly weapon*) that includes, as an element, use of a deadly weapon in the commission of a battery.  We return to *Cherry*, where Illinois' high court said exactly this.  There, the court used a wide-ranging discussion of the Illinois aggravated battery statute to explain its ultimate holding—that aggravated battery with a firearm is a separate offense from aggravated battery.  In the process, it asked the reader to consider the example of aggravated battery "involving the use of a deadly weapon other than a firearm."  *Cherry*, 63 N.E.3d at 877.  To "prove" this "offense," the court said, "the State must prove that the defendant: 'in committing a battery, used a deadly weapon other than by the discharge of a firearm.'"  *Id.* (quoting 720 Ill. Comp. Stat. Ann. 5/12-4(b)(1)) (cleaned up).  Thus, *aggravated battery involving the use of a deadly weapon* is not a way of committing *aggravated battery* or even *aggravated battery based on the use of a weapon or device*; it is

a distinct offense requiring proof of the use of a deadly weapon. And there is no shortage of consistent Illinois decisions.[2] There is also an abundance of cases that do not address the issue but demonstrate that defendants accused of violating 5/12-3.05*(f)(1)* are charged with and convicted of violating 5/12-3.05*(f)(1)*.[3] Any purported Illinois crime known as *aggravated battery based on the use of a weapon or device* is a chimera; the crime of *aggravated battery involving the use of a deadly weapon* is routinely charged and proven.

It is true that *Cherry*'s discussion of Section 5/12-3.05(f)(1) is dicta. We follow it for several reasons. First, a federal court tasked with interpreting state law must give state supreme court dicta great weight.[4] *Avakian v. Citibank, N.A.*, 773 F.3d 647, 651–52 (5th Cir. 2014). Second, the statements in *Cherry* follow from its parsing of the relevant statutory language. *Velasco* reached the same result based on a similar parsing, 465 F.3d at 639–40, and

---

[2] *People v. Marston*, 818 N.E.2d 1261, 1267 (Ill. App. Ct. 2004) (where defendant was charged with aggravated battery with a deadly weapon: "As was charged in this case, a person commits aggravated battery when he intentionally or knowingly without legal justification uses a deadly weapon other than a firearm to cause bodily harm to an individual."); *People v. Blanks*, 845 N.E.2d 1, 11–12 (Ill. App. Ct. 2005) (describing proof of the use of a deadly weapon as "the aggravating factor which satisfies the statute"); *People v. Garita*, 2016 WL 7228782, *3 (Ill. App. Ct. 2016) (unpublished) ("[T]he aggravated battery with a deadly weapon charge required the State to prove that defendant caused bodily harm to [the victim] while using a 'deadly weapon other than by discharging a firearm.'" (quoting Section 5/12-3.05(f)(1)).

[3] *See, e.g.*, *People v. Pratt*, 2017 WL 1497733, at *1 (Ill. App. Ct. Apr. 25, 2017) (unpublished); *People v. Williams*, 2017 WL 1211254, at *1 (Ill. App. Ct. Apr. 3, 2017); *People v. Khan*, 2017 WL 1019777, at *1 (Mar. 14, 2017) (unpublished); *People v. Curry*, 2017 WL 776082, at *1 (Ill. App. Ct. Feb. 24, 2017) (unpublished); *see also People v. Crespo*, 788 N.E.2d 1117, 1122 (Ill. 2001), as modified on denial of reh'g (Mar. 31, 2003) (defendant charged with distinct aggravated battery offenses, including "aggravated battery (great bodily harm)" and "aggravated battery (deadly weapon)").

[4] When, as here, a federal court must identify and apply state law in the absence of a clearly controlling state supreme court opinion, the analogous *Erie* inquiry calls on federal courts to "guess" how a state supreme court "would decide." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). This "guess" is not a surmise of what the state law would *become* if the state supreme court addressed the issue but rather what the state law *is*. *See, e.g.*, *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 749–50 (5th Cir. 1995).

*Mathis* endorses examinations of the statutory text when no state supreme court decision provides a definitive answer, 136 S.Ct. at 2256. Third, under Illinois' Murderer and Violent Offender Against Youth Registration Act, a "violation or attempted violation" of Section 5/12-3.05(f)(1) can constitute a "violent offense against youth," but subsections 5/12-3.05(f)(2)–(4) are not listed as qualifying offenses. 730 Ill. Comp. Stat. Ann. 154/5(b)(4.4). This works only if Section 12-3.05(f)(1) describes a discrete offense.

The Dissent announces it has found a *Mathis*-approved state court decision that conclusively resolves the question, *People v. Diaz*, 614 N.E.2d 268 (Ill. App. Ct. 1993). But *Diaz* turns out to be (1) Illinois law on the permissibility of general verdicts where a defendant is charged with multiple and distinct offenses, and is unrelated to the present case where conviction matches the crime charged and satisfies federal sentencing requirements; (2) a mere intermediate state court opinion, (3) a case that did not consider the statute before us and was in fact decided before both Section 12-3.05 and its predecessor statute (discussed in *Cherry*) were ever enacted, and (4) a case simply not involving statutory language, design, or meaning. Inasmuch as *Diaz* does not address Section 12-3.05(f) and therefore could not have possibly determined its divisibility, it is legally off-topic. Inasmuch as it deals with a situation where the prosecution seeks to convict under two different "definitions" of aggravated battery, it is factually inapt. But even if we overlook all of this and proceed as if *Diaz* muddled the picture, a return to our *Mathis*-mandated order of operations confirms our conclusion that Reyes' prior conviction qualifies as a crime of violence.

*Diaz* plainly does not "definitively answer[] the question" before us. *Mathis*, 136 S.Ct. at 2256. Accordingly, if the Dissent is not convinced by *Cherry* (and the host of intermediate appellate court decisions we have cited that do involve the relevant statute), it should next examine the statutory

text—which, as we have noted, *Cherry* does. *Id.* And if there is still no good answer, "federal judges have another place to look: the record of a prior conviction itself." *Id.* At this third *Mathis* step, courts utilize record documents as an aid in determining a statute's divisibility. *See id.* at 2257 n. 7 ("[W]hen state law does not resolve the means-or-elements question, courts should 'resort[ ] to the [record] documents' for help in making that determination.'" (quoting *Descamps v. United States*, 133 S.Ct. 2276, 2285 n.2 (2013)) (alterations in original)).

An indictment can resolve the elements-means question "by referencing one alternative term to the exclusion of all others," thereby indicating "that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* Here, Reyes' indictment is in the record. In Count 1—the count to which he pleaded guilty—Reyes was charged with "committing a battery . . . by use of a deadly weapon" and, more specifically still, with "a violation of 720 ILCS 5/12-3.05(f)(1)." There is no mention of Section 12-3.05(f)'s remaining provisions. This "peek" at the indictment was not necessary to determine Section 12-3.05(f) is divisible. But it demonstrates that *Diaz* has no application. "*As was charged in this case*, a person commits aggravated battery when he intentionally or knowingly without legal justification uses a deadly weapon other than a firearm to cause bodily harm to an individual." *Marston*, 818 N.E.2d at 1267 (emphasis added).

Reyes was charged and convicted of violating Section 5/12-3.05(f)(1). Aggravated battery involving use of a deadly weapon under Section 5/12-3.05(f)(1) is a discrete offense requiring proof of the use of a deadly weapon. It has been established, categorically, that the offense of which he was convicted represents a crime of violence under the Guidelines. The district court did not err in following *Velasco* and applying the crime-of-violence enhancement.

No. 16-40241

Illinois' aggravated battery statute is complex and has many parts.  We have held that its Section 5/12-3.05(f) is divisible and that a conviction under Section 5/12-3.05(f)(1) requires proof of the use of a deadly weapon.  We have no occasion to examine the statute further.  *Mathis* did not abrogate *Velasco*, and the sentence is AFFIRMED.

No. 16-40241

LESLIE H. SOUTHWICK, Circuit Judge, concurring:

I concur in the decision to affirm the sentence. Where I depart from Judge Reavley is that I do not conclude that the Illinois Supreme Court clearly resolved our issue in *People v. Cherry*, 63 N.E.3d 871 (Ill. 2016). As a result, I find it necessary to look elsewhere to be sure this statute is divisible.

*Cherry* held that aggravated battery "involving the use of a deadly weapon other than a firearm" requires the State to "prove" a defendant used "a deadly weapon other than by the discharge of a firearm[.]" *Id.* at 877 (quoting 720 ILL. COMP. STAT. § 5/12-4(b)(1) (West 2010)). The court referred to the use of a deadly weapon other than by discharge of a firearm as an "element[]" that "serve[s] to aggravate [the] battery." *Id.* at 878. What concerns me is that there is Illinois caselaw that suggests the use of the term "element" in *Cherry* might not have been with the same meaning as the United States Supreme Court meant in *Mathis*. *See Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016).

*Cherry* said it would discuss two "forms" of aggravated battery under the 2010 aggravated-battery statute: (1) causing great bodily harm under Section 5/12-4(a), and (2) using a deadly weapon other than by discharge of a firearm under Section 5/12-4(b)(1). *See Cherry*, 63 N.E.3d at 877–78. It analyzed these forms of aggravated battery in order to determine whether aggravated battery could be the predicate offense for another crime Cherry committed, which was armed violence. *Id.* at 876–77. There is no need to get into the nuances of that issue other than to pull a few points from the state court's analysis. First, the aggravated-battery statute, 2010 edition, required that a battery be committed. That also is the case for the statute under which Reyes was convicted. Second, the crime was aggravated if the State could "prove the presence of an additional factor aggravating that battery." *Id.* at 877.

12

In the course of its analysis, the *Cherry* court said that "[t]he aggravated battery and aggravated battery with a firearm statutes share an identical structure. Both offenses require the State to prove the commission of a battery, and both offenses require the State to prove the presence of an additional factor aggravating that battery." *Id.* The court did not have before it the issue of whether jurors would need to be unanimous regarding any one form of aggravated battery.

My uncertainties partly arise from an earlier Illinois intermediate appellate court decision. *See People v. Diaz*, 614 N.E.2d 268 (Ill. App. Ct. 1993). The *Diaz* court dealt with jury unanimity, which in substance is our issue. Jurors were given a verdict form which provided they could find Diaz guilty of aggravated battery if he "[1] intentionally and knowingly caused great bodily harm . . . or . . . [2] knowingly and intentionally caused bodily harm . . . and used a deadly weapon." *Id.* at 270. The offenses the *Diaz* court considered on the issue of juror unanimity are quite similar to the offenses the *Cherry* court considered on an unrelated issue of sentencing.

The defendant in *Diaz* argued that the general verdict form was fatally flawed because the jury did not need to be unanimous regarding the two theories of aggravated battery. *Id.* The court disagreed, holding the jury needed to be unanimous regarding the defendant's guilt of the crime charged, not the "'alternate ways in which the crime can be committed[.]'" *Id.* at 271 (quoting *People v. Travis*, 525 N.E.2d 1137, 1147 (Ill. App. Ct. 1988)). That would indicate at least some of the aggravating factors in the aggravated battery statute are means, not elements.

There are Illinois Supreme Court decisions that, like *Diaz*, fully embrace general verdicts for offenses that can be committed in disparate ways, a fact

recognized in the court's approved pattern jury instructions.[1] We read too much into *Cherry* to conclude it definitely meant "elements" in the *Mathis*-sense when that was not the court's concern.

*Diaz* must be viewed for what it is: an earlier decision of an intermediate court dealing with an earlier aggravated-battery statute. Even so, because the opinions were discussing different legal issues, I do not believe the *Diaz* decision which indicates the two forms of battery it was discussing should be considered two different means, and *Cherry* which uses "elements" for quite similar offenses, are necessarily inconsistent. Hence, my uncertainty.

Still, *Cherry* does not discuss *Diaz*. It did not need to as its issue was different. Perhaps *Cherry* implies that, if put to the test, the Illinois Supreme Court would hold that the forms of aggravated battery under Section 5/12-3.05(f)(1)–(4) contain separate *Mathis* elements. We have considered cases before that imply divisibility. *See, e.g.*, *United States v. Mendez-Henriquez*, 847 F.3d 214, 219 (5th Cir. 2017). The implication is strengthened when we see that the *Diaz* court recognized there are "due process limitations on a 'State's capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense[.]'" *Diaz*, 614 N.E.2d at 272 (quoting *Schad v. Arizona*, 501 U.S. 624, 632 (1991)). The variation among the forms of aggravated battery in the four subparts of Subsection (f) are quite

---

[1] *See People v. Smith*, 906 N.E.2d 529, 538 (Ill. 2009) ("[B]ecause first degree murder is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to *the means* by which the murder was committed."); Illinois Pattern Instruction Criminal No. 26.01 at 5–6 (using aggravated battery as an example for an instruction that may be used where "a defendant is charged in multiple counts with an offense that can be charged with different elements," but noting that distinguishing among the ways in which the offense can be committed is not mandatory according to *People v. Travis*, 525 N.E.2d 1137 (Ill. App. Ct. 1988)); *cf. People v. Graves*, 800 N.E.2d 790, 793 n.1 (Ill. 2003) (referring to aggravated battery as "[a] textbook example of a single offense that can be committed in multiple ways," yet distinguishing two subsections, referring to each as an "offense," and observing they contain distinct "elements").

different from each other, except for the two (Subparts (1) and (3)) that both deal with the use of a deadly weapon.

All that said, I see Judge Reavley's interpretation of *Cherry* just to be one possible view. Our task certainly does not end, though, even if *Cherry* does not provide clear answers. *See Mathis*, 136 S. Ct. at 2256–57. We can also examine whether "the statute on its face" resolves the issue, as Judge Reavley notes. *Id.* at 2256. The section of the Illinois statute at issue here does not seem to be providing "illustrative examples" but instead identifying widely different crimes, suggesting "elements." *See id.* Further, looking at the entire statute, the final Subsection (h) specifies different classifications for some but not all of the specific aggravated-battery provisions, which leads to different sentences. *See* 720 ILL. COMP. STAT. § 5/12-3.05(h). The provision at issue in our case is not identified in Subsection (h) as having a specific sentence range, but this part of the statute provides some evidence regarding the entire statute. When "statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis,* 136 S. Ct. at 2256.

So far, the evidence points towards the subparts of Subsection (f) containing different elements. Still, if doubt remains, we examine "the record of a prior conviction itself." *Id.* In one case where "state law [did] not give us a clear answer" on this issue, we held the statute was divisible because the defendant "actually pleaded guilty" to a specific element, and the documents in the record made clear that the statute set forth elements. *Ibanez-Beltran v. Lynch,* 858 F.3d 294, 298 (5th Cir. 2017). In another case, we first took note of one state court decision that "implie[d] the statute list[ed] alternative elements," but turned to the record of conviction because that case was not dispositive. *See Mendez-Henriquez*, 847 F.3d at 219. Because the defendant was charged with one element to the exclusion of all others, we held that "the statute enumerates alternative elements for committing a felony[.]" *Id.*

No. 16-40241

This record contains a copy of Reyes's indictment.  He was charged with a violation of Section 5/12-3.05(f)(1).  The indictment said a dangerous weapon was used, specifically a machete.  It contained no citation to or inclusion of language from any other subpart, *i.e.*, no reference to hoods or robes or recording the crime.  This peek at the court record supports that the statute is divisible.

I find it necessary to go beyond *Cherry*.  Doing so, I reach the same destination as does Judge Reavley, namely, that this subsection of the aggravated-battery statute is divisible.

16

No. 16-40241

PRISCILLA R. OWEN, Circuit Judge, dissenting:

The question to be resolved is whether a conviction for aggravated battery under 720 ILL. COMP. STAT. § 5/12-3.05 is a "crime of violence" within the meaning of section 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines that was in effect when Reyes was sentenced in 2016.[1] To answer this question, we must determine whether section 5/12-3.05 is "divisible" within the meaning of the Supreme Court's decision in *Mathis v. United States*.[2] The Court explained in *Mathis* that if, under state law, a jury need not agree on the particular method by which the defendant committed an offense, then alternative methods set forth in the statute of conviction are "means" of committing the offense, not "elements" of the offense.[3] A statute that sets forth "means" rather than "elements" is not divisible. A decision from an intermediate Illinois appellate court, *People v. Diaz*, held that when a jury is presented with two statutorily described alternative ways of committing aggravated battery, jurors, in convicting the defendant, need not agree as to which of the alternatives occurred.[4] A more recent intermediate appellate

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2L1.2 cmt. n.1(B)(iii) (U.S. SENTENCING COMM'N 2015):

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

[2] 136 S. Ct. 2243 (2016).

[3] *Id.* at 2256 ("This threshold inquiry—elements or means?—is easy in this case, as it will be in many others. Here, a state court decision definitively answers the question: The listed premises in Iowa's burglary law, the State Supreme Court held, are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. When a ruling of that kind exists, a sentencing judge need only follow what it says." (alteration in original) (citation omitted) (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981))).

[4] 614 N.E.2d 268, 270-71 (Ill. App. Ct. 1993).

court decision recognizes that *Diaz* stands for the proposition that the State may present a jury with alternative bases, as identified in the aggravated battery statute, on which to convict a defendant and that jury unanimity is not required.[5] Though *Diaz* did not deal with subsection (f) of Illinois's aggravated battery statute, but instead concerned former sections 11.05, 11.07, and 11.09 of the Illinois criminal statutes that governed aggravated battery,[6] its holding is highly instructive and has not been overruled. Unless and until the Illinois courts say otherwise, the *Diaz* decision, coupled with the Illinois Supreme Court's decision in *People v. Smith*,[7] provides significant guidance regarding jury unanimity that we should accept.

# I

A "crime of violence," as defined in section 2L1.2(b)(1)(A)(ii) of the Guidelines, includes "any . . . offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." The Government contends that Reyes's conviction under section 5/12-3.05(f) necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another."

A person commits the offense of "battery" under Illinois law "if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."[8] The offense of "battery" does not have

---

[5] *See People v. Smith*, 866 N.E.2d 1192, 1198 (Ill. App. Ct. 2007), *aff'd in part and rev'd in part*, 906 N.E.2d 529 (Ill. 2009) (explaining that in *Diaz*, the jury could have convicted the defendant without agreeing upon which "alternative course of conduct that the defendant committed").

[6] *See Diaz*, 614 N.E.2d at 271.

[7] 906 N.E.2d at 540-42.

[8] 720 ILL. COMP. STAT. § 5/12-3.

No. 16-40241

as an element the use, attempted use, or threatened use of physical force against the person of another.[9]  Reyes was convicted of "aggravated battery" under section 5/12-3.05(f), which provides:

> (f)  Offense based on use of a weapon or device.  A person commits aggravated battery when, in committing a battery, he or she does any of the following:
>
> (1)  Uses a deadly weapon other than by discharge of a firearm, or uses an air rifle as defined in Section 24.8-0.1 of this Code.
>
> (2)  Wears a hood, robe, or mask to conceal his or her identity.
>
> (3) Knowingly and without lawful justification shines or flashes a laser gunsight or other laser device attached to a firearm, or used in concert with a firearm, so that the laser beam strikes upon or against the person of another.
>
> (4) Knowingly video or audio records the offense with the intent to disseminate the recording.

If section 5/12-3.05(f) is divisible, then a conviction under subsection (1) would involve the use or threatened use of physical force against the person of another, but a conviction under subsection (2) or (4) would not.  However, as explained above, the Illinois intermediate courts have not required a jury to agree on the method by which an aggravated battery was committed in order to convict a defendant.  For example, a defendant could be charged under this section for committing a battery while "us[ing] a deadly weapon other than by discharge of a firearm" or while "wear[ing] a hood."  Jurors could disagree on whether a deadly weapon was used and still return a guilty verdict.

---

[9] *See United States v. Velasco,* 465 F.3d 633, 637 (5th Cir. 2006).

No. 16-40241

## II

JUDGE REAVLEY's opinion properly sets forth the "threshold inquiry" of "elements or means" from the Supreme Court's decision in *Mathis v. United States*[10] and correctly observes that "[s]tate courts are the ideal expositors of state law."[11]　Resolving the threshold inquiry in *Mathis* was "easy" for the Supreme Court, because a "state court decision definitively answer[ed] the question" and "[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says."[12]　In *Mathis*, a state court decision definitively held that "[t]he listed premises in Iowa's burglary law . . . are 'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle."[13]　"Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list."[14]

The guidance that we have from the Illinois courts indicates that a jury would not have to agree as to which subsection of section 5/12-3.05(f) applied in finding a defendant guilty under subsection (f).　In *People v. Diaz*, the defendant was convicted of aggravated battery, though the jury instructions did not require the jury to agree on how the defendant actually committed the crime.[15]　Instead, the instructions "permitted the jury to return a general guilty verdict of aggravated battery" by finding that the defendant either "intentionally and knowingly caused great bodily harm" or "knowingly and intentionally caused bodily harm . . . and used a deadly weapon."[16]　On

---

[10] 136 S. Ct. 2243, 2256 (2016).

[11] *Ante* at 4.

[12] *Mathis*, 136 S. Ct. at 2256.

[13] *Id.* (alteration in original) (quoting *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

[14] *Id.*

[15] 614 N.E.2d 268, 270 (Ill. App. Ct. 1993).

[16] *Id.*

appeal, the defendant argued that allowing the jury to "disagree[] as to which alternative course of conduct [he] committed" violated his constitutional rights.[17]  An Illinois appellate court affirmed the conviction, quoting *People v. Travis*[18] for the proposition that "the jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed, and, accordingly, we so hold."[19]  The threshold inquiry should end here, as it did in *Mathis*.

JUDGE SOUTHWICK's opinion discounts *Diaz* as an older, intermediate appellate court decision.[20]  However, Illinois's current pattern jury instructions reflect that *Diaz* continues to have purchase in the submission of aggravated battery to jurors.  A "General Concluding Instruction" in the pattern jury instructions specifically allows a jury to convict a defendant of aggravated battery without agreeing on the alternative methods of the crime.[21]  The Committee Notes to the instructions state that "[w]hen a defendant is charged in multiple counts with an offense that can be charged with different elements," the court *may* use a jury instruction that requires the jury to agree on which "particular way" the defendant committed the crime, but it is not required to do so.[22]  The instructions use aggravated battery as an example:

> An example would be a defendant charged in three separate counts
> with aggravated battery based upon his alleged (1) causing great

---

[17] *Id.*

[18] 525 N.E.2d 1137 (Ill. App. Ct. 1988).

[19] *Diaz*, 614 N.E.2d at 271 (quoting *Travis*, 525 N.E.2d at 1147); *see also People v. Jackson*, 874 N.E.2d 123, 129 (Ill. App. Ct. 2007) ("Defendant was not entitled to a unanimous verdict on whether he fired the weapon or whether [his friend] fired the weapon." (citing *Travis*, 525 N.E.2d at 1147)).

[20] *Ante* at 14.

[21] Illinois Pattern Jury Instructions–Criminal § 26.01 & accompanying notes.

[22] *Id.*

bodily harm, (2) causing bodily harm to a police officer, and (3) committing a battery upon a public way. Each of these charges is called aggravated battery, but each contains an element that must be proved beyond a reasonable doubt that neither of the other charges contains. Accordingly, a court may choose to distinguish on the verdict forms between the ways in which aggravated battery can be committed. If the court so chooses, then the opening sentence of the issues instructions as well as the guilty and not guilty verdict forms should be expanded to distinguish among the different ways a particular charge is before the jury.

> . . . .

> The Committee wishes to emphasize that distinguishing among the various ways in which a given charge is brought is not required by law. In *People v. Travis*, 170 Ill. App. 3d 873, 525 N.E.2d 1137, 121 Ill. Dec. 830 (4th Dist. 1988), the court rejected the argument that such distinctions were mandatory and stated the following: "the best rule is that the jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed . . . ."[23]

JUDGE SOUTHWICK's opinion suggests that "if put to the test, the Illinois Supreme Court would hold that the forms of aggravated battery under Section 5/12-3.05(f)(1)–(4) contain separate *Mathis* elements."[24] With great respect, this *Erie* guess[25] seems to miss the mark for several reasons. First, at the time Reyes was convicted, through the present, Illinois courts have construed the varying methods of committing "aggravated battery" to comprise a single offense. The Illinois Supreme Court has construed varying means of committing murder to comprise a single event.[26] Discounting and disregarding these state court opinions ignores "'*Taylor*'s demand for certainty' when

---

[23] *Id.*

[24] *Ante* at 14.

[25] *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[26] *See People v. Smith*, 906 N.E.2d 529, 540-42 (Ill. 2009).

determining whether a defendant was convicted of a generic offense."[27]  A federal sentencing court must ask what the state court *required* a jury to find, under state law, to convict a defendant of the state offense at the time of conviction.[28]  Neither JUDGE REAVLEY's opinion nor JUDGE SOUTHWICK's opinion offers any basis for concluding with assurance that, *at the time that Reyes was convicted*, Illinois law treated the various methods of committing aggravated burglary set forth in section 5/12-3.05 as elements of separate offenses, not means of committing an offense.  As will be discussed below, virtually all of the Illinois decisions indicate that the Illinois courts have treated aggravated battery, and certain other crimes with statutorily-described means of committing the offense, as a single offense.

JUDGE REAVLEY's opinion characterizes the holding in *Diaz* as "Illinois law on the permissibility of general verdicts where a defendant is charged with multiple and distinct offenses, and is unrelated to the present case where conviction matches the crime charged and satisfies federal sentencing requirements."[29]  Though the defendant in *Diaz* was charged with multiple offenses, only aggravated battery was at issue on review, as he was acquitted of all other charges.[30]  The *Diaz* decision focused on the validity of a general verdict finding the defendant guilty of one offense—aggravated battery—"even though the jury may have disagreed over which of the instruction's two alternative courses of conduct defendant committed."[31]  *Diaz* is related to the

---

[27] *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016) (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)).

[28] *See id.* at 2255 ("[A]n ACCA penalty may be based only on what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)." (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013))).

[29] *Ante* at 9.

[30] *People v. Diaz*, 614 N.E.2d 268, 269 (Ill. App. Ct. 1993).

[31] *Id.*

present case because it demonstrates that Illinois law does not require jury unanimity how an aggravated battery was committed.

JUDGE REAVLEY's opinion relies on the Illinois Supreme Court's decision in *People v. Cherry*,[32] contending that its "ultimate holding" was that "aggravated battery with a firearm is a separate offense from aggravated battery."[33] The actual issue in *Cherry* was "whether aggravated battery with a firearm is an enhanced or aggravated version of aggravated battery, such that aggravated battery cannot serve as the predicate for armed violence."[34] The court held that "like aggravated battery itself, aggravated battery with a firearm is an enhanced or aggravated form of battery. Consequently, there is absolutely no reason why, as charged in this case, aggravated battery cannot serve as the predicate for a charge of armed violence."[35] The Illinois court suggested in *Cherry*, in dicta, that aggravated battery involving the use of a deadly weapon might be a separate "offense,"[36] but the court was not addressing the question we must resolve. It was not using the term "offense" in the context of *Mathis*'s distinction between a "means" of committing an offense and the "elements" of an offense. The Illinois court compared aggravated battery by great bodily harm and aggravated battery by use of a deadly weapon (contained in different subsections in the same former section), denominating "both of these provisions" "two forms of aggravated battery."[37] The court continued by stating that "to prove the latter offense, the State must prove that the defendant . . . [used] a deadly weapon."[38]

---

[32] 63 N.E.3d 871 (Ill. 2016).

[33] *Ante* at 7.

[34] *Cherry,* 63 N.E.3d at 879.

[35] *Id.*

[36] *Id.* at 877-78.

[37] *Id.*

[38] *Id.* at 877 (second alteration in original).

No. 16-40241

The Illinois court did not hold in *Cherry* that in convicting a defendant of aggravated battery, jury unanimity was required as to whether aggravated battery had been committed by great bodily harm or instead had been committed by use of a deadly weapon. Rather, the court observed that they share the underlying offense of simple battery.[39]

None of the other decisions cited in JUDGE REAVLEY's opinion address the issue of juror unanimity, on which our analysis of section 5/12-3.05(f) turns.[40] They address only the proof required when a specific means is charged,[41] not whether a jury is required to agree if the defendant committed aggravated battery while wearing a hood or while using a deadly weapon other than by discharging a firearm.

JUDGE SOUTHWICK's opinion correctly observes that certain subsections of Illinois's aggravated battery statute carry different punishments[42] and that, as a general proposition, when "statutory alternatives carry different punishments, then under *Apprendi* they must be elements."[43] However, the punishment for an offense described in subsection (f) does not vary based on which of the four subsections is applicable.[44] It is also important to understand that while federal sentencing courts may recognize that there may be an issue under *Apprendi* if, for example, the Illinois courts did not require jury unanimity as to which subsection of section 5/12-3.05(a) a defendant violated, since the punishment differs among those subsections, that does not speak to actual practice in the state courts. If a state court in actual

---

[39] *Id.* at 877-78.
[40] *See ante* at 8 n.4.
[41] *See ante* at 8 n.4.
[42] *Ante* at 15; *see* 720 ILL. COMP. STAT. § 5/12-3.05(h).
[43] *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).
[44] § 5/12-3.05(h).

practice did not require juror unanimity, then a conviction under a statute with alternatives that fall outside the definition of a "crime of violence" should not be used to enhance a sentencing range, since the courts did not treat the statute as divisible within the meaning of *Mathis*.

It bears repeating that the punishment for any conduct described in subsection 5/12-3.05(f) is the same. In any event, the fact that Illinois varies its punishments for conduct described within other subsections of section 5/12-3.05, such as subsection (a), does not mean that the varying conduct described within every subsection of section 5/12-3.05 defines a separate "offense" such that the statute is divisible under *Mathis*. To the contrary, the Illinois courts have held that a single offense may have different punishments and that a jury may convict a defendant of that offense without specifying which means the defendant used to commit the crime.[45] Instead of requiring jury unanimity as to which of the various means that were charged was actually employed, the Illinois courts have held that, at least when a trial court denies a defendant's request for a specific verdict form for each means charged and instead submits a general verdict form, the sentence for the offense is limited to the most favorable sentence from the defendant's perspective.[46]

In *People v. Smith*, the Illinois Supreme Court described first degree murder as a single offense, even though the statute had "three 'types' of murder,"—intentional, knowing, and felony murder—and prescribed "different sentencing consequences based on the specific theory of murder proven."[47] The court concluded that the different types are "merely different ways to commit

---

[45] *See People v. Smith*, 906 N.E.2d 529, 540-42 (Ill. 2009).

[46] *Id.*

[47] *Id.* at 537, 538 ("While our statute describes three 'types' of murder, first degree murder is a single offense. As we have explained on numerous occasions, 'the different theories embodied in the first degree murder statute . . . are merely different ways to commit the same crime.'" (quoting *People v. Cooper*, 743 N.E.2d 32, 39 (Ill. 2000))).

the same crime" even though the sentencing consequences varied.[48]  The court explained that "because first degree murder is a single offense, it is constitutionally permissible for jurors to return a general verdict of guilty even if there is no juror unanimity with regard to *the means* by which the murder was committed,"[49] citing *Schad v. Arizona*.[50]  The court upheld the murder conviction in *Smith* even though the jury returned a general verdict of guilty without specifying which type of murder the defendant committed.[51]  The Illinois Supreme Court held that "where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense."[52]  However, because the defendant had requested specific verdict forms, and the trial court denied that request in submitting a general verdict form, the Illinois court held that the lesser sentence must be applied.[53]

---

[48] *Id.* at 537 (quoting *Cooper*, 743 N.E.2d at 39); *see also id.* at 538 ("While it is certainly true that first degree murder is but a single offense and, thus, a general verdict need not rest on a unanimous finding of a particular theory of murder, it is also true that there may be different sentencing consequences based on the specific theory of murder proven.  For example, there are several aggravating factors, applicable only to murders committed intentionally or knowingly, which, if proven to exist, will support a sentence of death."); *id.* ("However, a person convicted of felony murder is eligible for the death penalty only if the sentencing jury finds beyond a reasonable doubt . . . that the defendant actually killed the victim or substantially contributed to his physical injuries and, in so doing, intended to kill or knew that his acts caused a strong probability of death or great bodily harm.").

[49] *Id.* at 538.

[50] 501 U.S. 624, 631-32 (1991).

[51] *Smith*, 906 N.E.2d at 545.

[52] *Id.* at 540.

[53] *Id.* at 541-43, 544-45 (noting that "where a defendant is charged with murder in multiple counts alleging intentional, knowing, and felony murder, and a general verdict of guilty is returned, the defendant is presumed to be convicted of the most serious offense—intentional murder—so that judgment and sentence should be entered on the conviction for intentional murder and the convictions on the less serious murder charges should be vacated," but concluding "that where, as here, specific findings by the jury with regard to the offenses charged could result in different sentencing consequences, favorable to the

No. 16-40241

JUDGE REAVLEY's opinion additionally asserts that this case can be resolved by using the documents from Reyes's prior conviction "as an aid in determining [the] statute's divisibility."[54]  I sympathize with this view, but it was expressly rejected in *Mathis*.  The defendant in *Mathis* had previously been convicted under an Iowa burglary statute that "covers more conduct than generic burglary does."[55]  The Supreme Court reversed the sentence imposed under the Armed Career Criminal Act (ACCA) because it concluded that the Iowa statute was not divisible.[56]  JUSTICE BREYER's dissenting opinion argued that the sentence could be upheld based on what was charged in *that* prior Iowa case and what the prosecution had to prove to get a conviction in *that* case.  JUSTICE BREYER's opinion explained that "[t]he relevant state statute, an Iowa statute, says that a person commits a crime if he (1) 'enters an occupied structure,' (2) 'having no right . . . to do so,' (3) with 'the intent to commit a felony.'"[57]  The statute "define[d] 'occupied structure' as including any (1) 'building,' (2) 'structure,' (3) 'land' vehicle, (4) 'water' vehicle, or (5) 'air vehicle, or similar place.'"[58]  But, "if the structure that the offender unlawfully entered was a land, water, or air vehicle, the state crime does not count as a 'burglary.'"[59]  JUSTICE BREYER's dissenting opinion then examined the charging documents and advocated that Mathis had been convicted of generic

---

defendant, specific verdict forms must be provided upon request and the failure to provide them is an abuse of discretion.  Accordingly, we affirm the appellate court's finding that, in the cases at bar, the trial courts erred when they refused defendants' requests for separate verdict forms.").

[54] *Ante* at 10.

[55] *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016).

[56] *Id.* at 2253-54, 2257.

[57] *Id.* at 2259 (BREYER, J., dissenting) (second alteration in original) (quoting IOWA CODE § 713.1).

[58] *Id.* (quoting IOWA CODE § 702.12).

[59] *Id.* at 2260.

burglary because what the prosecutor actually charged, and therefore was required to prove, constituted generic burglary:

> Here, if we look at the court documents charging Mathis with a violation of the state statute, they tell us that he was charged with entering, for example, a "house and garage." They say nothing about any other structure, say, a "water vehicle." Thus, to convict him, the jury—which had to find that he unlawfully entered an "occupied structure"—must have found that he entered a "house and garage," which concededly count as "building [s]." So why is that not the end of this matter? Why does the federal statute not apply?[60]

This understanding of the modified categorical approach was expressly rejected by the Court in *Mathis*, and JUDGE REAVLEY's opinion reflects precisely the same logically appealing, but incorrect, understanding of the modified categorical approach. The Court's opinion in *Mathis* draws a fine distinction as to when and for what purpose the record of a prior conviction may be consulted in determining if a statute is divisible.[61]  But the Court's opinion in *Mathis* unequivocally disapproved of an approach like that advanced in JUDGE REAVLEY's opinion because otherwise, in *Mathis*, the Court would not have reversed the court of appeals' judgment.

JUDGE REAVLEY's opinion points to Illinois's Murderer and Violent Offender Against Youth Registration Act,[62] under which section 5/12-3.05(f)(1) can constitute a "violent offense against youth" but the other subsections of section 5/12-3.05(f) cannot.[63]  That section 5/12-3.05(f)(1) is singled out in this Act is not dispositive in our case. The Act lists two other types of aggravated battery that can constitute a violent offense against youth: aggravated battery by "great bodily harm or permanent disability or disfigurement," section 5/12-

---

[60] *Id.* (alteration in original) (citation omitted).
[61] *See id.* at 2256-57 (majority opinion).
[62] *Ante* at 9; 730 ILL. COMP. STAT. § 154/1.
[63] 730 ILL. COMP. STAT. § 154/5(b)(4.4).

3.05(a)(1), and by committing battery on a "person who is pregnant or has a physical disability," section 5/12-3.05(d)(2).[64]    However, as noted above, the Illinois pattern jury instructions use aggravated battery by "great bodily harm" as an example of one of the "various ways" of committing aggravated battery that does not require jury unanimity.[65]    That is, even though aggravated battery by great bodily harm is singled out by Illinois's Murderer and Violent Offender Against Youth Registration Act, Illinois's pattern jury instructions do not require jury unanimity on whether a defendant actually did cause great bodily harm.    A type of aggravated battery is not necessarily a "discrete offense" because Illinois's Murderer and Violent Offender Against Youth Registration Act singles it out as a type of aggravated battery that can constitute a "violent offense against youth."[66]

*    *    *

For these reasons, I respectfully dissent.

---

[64] *Id.*

[65] Illinois Pattern Jury Instructions–Criminal § 26.01 & accompanying notes.

[66] *Ante* at 9.