NOTICE
Decision filed 12/10/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130085

NO. 5-13-0085

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-CF-1007 |
| | ) | |
| JAMES CHERRY, | ) | Honorable |
| | ) | Michael N. Cook, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Goldenhersh and Stewart concurred in the judgment and opinion.

## OPINION

¶ 1    The defendant, James Cherry, was found guilty by a St. Clair County jury of one count of aggravated battery with a firearm, a Class X felony (720 ILCS 5/12-4.2(a)(1) (West 2010)), and one count of armed violence, a Class X felony (720 ILCS 5/33A-2(b) (West 2010)). The armed violence conviction was predicated on his knowingly causing great bodily harm to another as prohibited by the Illinois aggravated battery statute (720 ILCS 5/12-4(a) (West 2010)). On July 6, 2011, the defendant was sentenced to 25 years' imprisonment to be served at 85% on the armed violence conviction, with the lesser count of aggravated battery with a firearm merged into it for sentencing purposes. For

1

the following reasons, we vacate the defendant's armed violence conviction and remand for sentencing based on the defendant's remaining conviction.

¶ 2    On November 19, 2010, the defendant was charged by indictment with one count of armed violence and two counts of aggravated battery with a firearm.  One count of aggravated battery with a firearm was dismissed pursuant to the State's March 21, 2011, motion.  The State filed a "[n]otice of intent to seek extended-term sentencing pursuant to 730 ILCS 5/5-5-3.2(b)(10) [*sic*]," as the defendant committed the offenses with a firearm with an attached laser sight.

¶ 3    Evidence adduced at trial reflected that on October 31, 2010, the defendant was involved in an altercation in an East Saint Louis parking lot owned by Bey Miller-Bey and his son, Larry Miller.  Bey's daughter, Montrese Miller, also worked on the parking lot, as did their friend Jarius Lacey.  The defendant arrived in Bey's parking lot around 2 a.m. in a black Dodge Nitro.  The defendant, a passenger in the vehicle, paid Montrese for parking privileges.  The driver parked at a perpendicular angle to Montrese's vehicle, a blue Chrysler.  The defendant and his companion then walked over to Club Illusion. Sometime around 4:30 a.m., the defendant returned to the vehicle alone.  Larry Miller testified that the defendant walked around the vehicle, got in and out, and eventually stood next to the building as though he was urinating.  Larry asked the defendant not to disrespect the property, and the two began arguing.  The defendant then pointed a gun with a laser sight at Larry.  Larry testified that the defendant asked if Larry was trying to steal his truck, and then shot him in the stomach.  The witnesses heard between 6 and 12 gunshots.  Larry was shot multiple times and Montrese was shot in the neck.  After the

2

shooting stopped, Montrese flagged down a police car. Larry's girlfriend, Tonya Moore, arrived to take Larry to the hospital. Montrese and Bey accompanied Larry to the hospital.

¶ 4     Former police officer Ramon Carpenter testified that he heard gunshots while he was on patrol that night, and was flagged down by Montrese upon his arrival at the scene. Carpenter stated that Lacey and Bey identified the defendant as the shooter, and Lacey testified that the defendant told the arriving officers that he "didn't mean to do it" and that he was a cop. Carpenter noted that when he approached the defendant, the defendant told him, "[T]hey're trying to kill me." The defendant was placed under arrest. Carpenter inventoried the defendant's vehicle, which had a bullet hole on the rear driver's-side passenger door. Inside the vehicle, behind the driver's seat, a fully loaded black magazine to a handgun was recovered. A firearm was recovered in a wooded area behind the building. No other weapons were located in the area. Carpenter confirmed that the only discharged casings in the area were the ones by the defendant's vehicle.

¶ 5     Crime scene investigator Michael Grist processed the scene, collecting eight casings into evidence. He opined that the bullet defect in the Nitro's door was fired from back to front of the vehicle. He also recovered a projectile fragment from the front driver's-side floorboard of the Chrysler, which had a bullet hole in the front driver's-side door trim. He noted that the firearm that was recovered from the woods had a laser sight and still contained several live rounds. Thomas Gamboe, a forensic scientist employed by the Illinois State Police, confirmed that the discharged casings were fired from the firearm that was recovered from behind the building.

3

¶ 6     The jury found the defendant guilty of armed violence, and that he committed the offense while armed with a firearm with an attached laser sight. The jury also found him guilty of aggravated battery, and that he committed the offense while armed with a firearm with an attached laser sight.

¶ 7     The defendant filed a "post-trial motion for new trial" on April 6, 2011, asserting that the State failed to prove him guilty of the charges beyond a reasonable doubt, and that there was not credible evidence demonstrating that he committed the crimes "without legal justification." The motion was denied at the defendant's July 6, 2011, sentencing hearing.

¶ 8     On June 30, 2011, the defendant wrote a letter to the trial court asserting that he received ineffective assistance from his trial counsel where his counsel had his bond assigned as part of the fee, without the defendant's knowledge, and that his attorney operated under a conflict of interest because he was an associate of Miller-Bey. The letter also asserted that his counsel failed to interview witnesses, did not conduct an investigation, did not investigate other crimes near the parking lot, did not hire a ballistics expert, did not test the bullet that was removed from his vehicle, and failed to challenge the admission of the magazine found in his vehicle. The defendant also claimed that the State acted in bad faith by failing to maintain the chain of custody for the vehicles involved in the incident, by not calling Miller's girlfriend as a witness, and by not questioning the Club Illusion patrons from that evening.

¶ 9     While the defendant was speaking in allocution at his July 6, 2011, sentencing hearing, he began reading the aforementioned letter to the trial court. The State requested

a side-bar and noted to the court that it felt that the hearing was not an appropriate venue for the defendant's assertions. In response, defense counsel noted that he was "probably going to be withdrawing anyway for purposes of appeal" and agreed with the trial court and the State that he did not see the relevance at a sentencing hearing. The trial court told the defendant that his complaints were more properly brought up on appeal, and not relevant to the sentencing. The defendant was allowed to continue reading his letter, but again the State requested a side-bar and objected to the relevance of the defendant's statement. The court sustained the objection and told the defendant, "[A]ny error that you believe the Court or the attorneys made is something that is germane to an appeal, not to your statement in allocution." The defendant received his sentence. After receiving his appellate admonitions, the defendant asked how he could obtain a different lawyer. The court asked the defendant whether he believed that there was "a breakdown in [his] lawyer/client relationship with [his attorney] among other things and would request that the court appoint a lawyer." The defendant agreed, and the court appointed a public defender to represent the defendant.

¶ 10    On August 4, 2011, the defendant's newly appointed counsel (posttrial counsel) filed a motion to reconsider the sentence, asserting that the defendant's sentence was extreme in light of all the circumstances involved, and that the events were unlikely to recur. After a hearing on December 7, 2011, the motion was denied.

¶ 11    On January 2, 2012, the trial court filed an order granting the defendant a hearing on his *pro se* letter regarding the ineffective assistance of his trial counsel, pursuant to the rule in *People v. Krankel*, 102 Ill. 2d 181 (1984). At the January 16, 2013, hearing, the

5

defendant's posttrial counsel requested that the court consider the issues presented in the defendant's letter, as well as an allegation that his trial counsel was ineffective for failing to investigate medical records that may have demonstrated that the defendant was not under the influence of alcohol during the incident. No witnesses were called, and the court requested that the parties give brief argument on the issues. The defendant's allegations were presented, and the State responded that these were matters of trial strategy. The State also noted that some of the defendant's allegations occurred during the pretrial stage, and the defendant could have fired his privately retained trial attorney at any time. The court found that the defendant's allegations did not meet his burden under *Strickland v. Washington*, 466 U.S. 668 (1984), as he did not demonstrate a reasonable probability that any errors by his trial counsel would have substantially changed the outcome of his case, and that the defendant was not prejudiced by his trial counsel's performance. The court denied the defendant's motion.

¶ 12    The defendant presents two points on appeal. First, he asserts that his conviction for armed violence is void, as the armed violence statute specifically excludes aggravated battery as a possible predicate felony for an armed violence conviction. In addressing this claim, we begin by noting that our primary objective is to give effect to the intention of the legislature, and if this court can ascertain the intent from the plain language of the statute, that intent must prevail. *People v. Blair*, 215 Ill. 2d 427, 442-43 (2005). Further, any ambiguity in a penal statute must be construed in favor of the defendant. *People v. Whitney*, 188 Ill. 2d 91, 98 (1999). This court reviews questions of statutory construction

6

*de novo*. *Blair*, 215 Ill. 2d at 443. A review of the relevant statutes' language and history aids our decision in the instant case.

¶ 13     The Illinois statute prohibiting armed violence is the vehicle that allows the State to seek higher Class X penalties for a defendant where a predicate felony is committed in circumstances involving the presence or use of a dangerous weapon.[1] The General Assembly's stated intention of the statute is to deter the use of firearms in the commission of a felony, due to their more lethal nature, the significant escalation of the threat, and the potential for bodily harm that comes with their presence. 720 ILCS 5/33A-1(a), (b) (West 2010). However, the statute also specifically excludes certain felonies from providing the basis for an armed violence conviction, providing in relevant part:

> "(b) A person commits armed violence when he or she personally discharges a firearm that is a Category I or Category II weapon while committing any felony defined by Illinois law, except first degree murder, attempted first degree murder, intentional homicide of an unborn child, second degree murder, involuntary manslaughter, reckless homicide, predatory criminal sexual assault of a child, aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05, home invasion, or *any offense that makes the possession or use of a dangerous weapon either an element of the base offense, an*

---

[1] The statute states that "[v]iolation of Section 33A-2(a) with a Category I weapon is a Class X felony for which the defendant shall be sentenced to a minimum term of imprisonment of 15 years." 720 ILCS 5/33A-3(a) (West 2010).

*aggravated or enhanced version of the offense, or a mandatory sentencing factor that increases the sentencing range*."  (Emphasis added.)  720 ILCS 5/33A-2(b) (West 2010).

¶ 14    The statute providing the predicate felony for the defendant's armed violence conviction, aggravated battery, provides in relevant part:

"(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm *** commits aggravated battery.

(b) In committing a battery, a person commits aggravated battery if he or she:

(1) Uses a deadly weapon other than by the discharge of a firearm ***[.]

* * *

(e) ***

(1) *** [A]ggravated battery is a Class 3 felony."  720 ILCS 5/12-4(a), (b)(1), (e)(1) (West 2010).

¶ 15    The relevant subsection of the statute prohibiting aggravated battery with a firearm provides:

"(a) A person commits aggravated battery with a firearm when he, in committing a battery, knowingly or intentionally by means of the discharging of a firearm (1) causes any injury to another person ***.

(b) A violation of subsection (a)(1) of this Section is a Class X felony." 720 ILCS 5/12-4.2(a)(1), (b) (West 2010).

8

¶ 16    The defendant's argument is based on the language of the armed violence statute, which we have emphasized above. The defendant notes that the use of a firearm elevates a charge of aggravated battery to a charge of aggravated battery with a firearm, creating an enhanced version of the offense. Thus, the defendant argues, aggravated battery is a specifically prohibited predicate felony per the clause in the armed violence statute excluding "any offense that makes the possession or use of a dangerous weapon either an element of the base offense[ ] [or] an aggravated or enhanced version of the offense" (720 ILCS 5/33A-2 (West 2010)).

¶ 17    In rebuttal, the State argues that there is no blanket proscription on predicating an armed violence conviction on aggravated battery. The State notes that the defendant's predicate felony was not based in either section 12-4(b)(1) or section 12-4.2 of the Criminal Code of 1961 (720 ILCS 5/12-4(b)(1), 12-4.2 (West 2010)), both of which are clearly excluded by the armed violence statute by virtue of their inclusion of presence or use of a weapon in the base offense. Rather, the defendant's conviction was based on his battery causing "great bodily harm" as the aggravating factor.[2] The State cites numerous

_____

[2]The charging instrument stated that the defendant committed armed violence "while armed with a dangerous weapon, a gun," by performing acts prohibited by section 12-4(a) of the Criminal Code of 1961 (720 ILCS 5/12-4(a) (West 2010)), "in that he knowingly caused great bodily harm to Larry Miller, in that he shot Larry Miller in the leg with a handgun, and the said defendant personally discharged a handgun that is a Category I weapon."

9

Illinois cases finding section 12-4(a) to be a proper predicate felony to the armed violence statute, as the presence or use of a weapon is not an element of aggravated battery causing great bodily harm. See, *e.g.*, *People v. Hines*, 257 Ill. App. 3d 238, 243 (1993); *People v. Drakeford*, 139 Ill. 2d 206, 214 (1990); *People v. Floyd*, 262 Ill. App. 3d 49, 59-60 (1994); *People v. Decker*, 126 Ill. App. 3d 428, 432 (1984).

¶ 18    However, we agree with the defendant's interpretation. Though the State has indeed presented case law supporting its argument, the cited authority predates crucial amendments to the armed violence statute. In 2000, when the Illinois legislature enacted Public Act 91-404 and created the 15-20-25-life sentencing scheme, the armed violence statute was amended to specifically exclude 10 newly enhanced offenses in order to avoid punishing identical conduct more severely and thus violating the proportionate-penalties clause of the Illinois Constitution.[3] 720 ILCS 5/33A-2(b) (West 2000); Pub. Act 91-404,

--------

[3]The preamendment armed violence statute read that "[a] person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/33A-2 (West 1994). The 2000 amendment, in relevant part, read that "[a] person commits armed violence when he or she personally discharges a firearm that is a Category I or Category II weapon while committing any felony defined by Illinois law, except first degree murder, attempted first degree murder, intentional homicide of an unborn child, predatory criminal sexual assault of a child, aggravated criminal sexual assault, aggravated kidnaping, aggravated battery of a child, home

10

§ 5 (eff. Jan. 1, 2000). Despite the amendment, the dueling sentencing options led to proportionate-penalties violations that were successfully litigated in our courts. See, *e.g.*, *People v. Hauschild*, 226 Ill. 3d 63, 86-87 (2007) (holding that the 15-year enhancement provided for in the armed robbery statute was unconstitutional because the sentence was more severe than the sentence for the identical offense of armed violence based on robbery). In 2007, the Illinois legislature again amended the statute. The statute currently in force excludes several of the previously included 15-20-25-life offenses, includes several other offenses, and has the umbrella "any felony" clause at issue here.[4] See 720 ILCS 5/33A-2 (West 2010); Pub. Act 95-688, § 4 (eff. Oct. 23, 2007).

¶ 19 We think the plain language of the current statute prohibits predicating armed violence on any part of the aggravated battery statute, including section 12-4(a). The wording unambiguously excludes *any offense* that makes the use of a dangerous weapon either an element of the base offense or an aggravated or enhanced version of the offense. Thus, this clause provides alternative circumstances under which an offense–not parts or

invasion, armed robbery, or aggravated vehicular hijacking." 720 ILCS 5/33A-2(b) (West 2000).

[4]The 2007 amendment added second-degree murder, involuntary manslaughter, and reckless homicide to the list of specifically excluded predicate felonies. The legislature noticeably *removed* aggravated criminal sexual assault, aggravated kidnaping, armed robbery, and aggravated vehicular hijacking, as those felonies were now included under the umbrella "any felony" clause.

11

subsections of an offense–cannot be used as a predicate offense. We focus here on the prohibition of "an aggravated or enhanced version of the offense." Aggravated battery, which prohibits battery causing great bodily harm (section 12-4(a)) and battery using a weapon other than a firearm (section 12-4(b)(1)), is a Class 3 felony. Aggravated battery with a firearm (section 12-4.2) is a Class X felony. Consequently, aggravated battery with a firearm is an enhanced version of aggravated battery. As aggravated battery is an offense that makes the use of a dangerous weapon an enhanced version of the offense, the logical conclusion is that it is specifically excluded by the statute's most recent iteration, despite the fact that the prosecution chose a subsection of the predicate offense that does not reference a weapon.

¶ 20    In reaching our conclusion, we note that the defendant was also convicted of aggravated battery with a firearm based on the same event. As such, we find it would be patently unreasonable to conclude that the prosecution may both charge the defendant with an enhanced version of an offense and then also predicate an armed violence charge on a subsection of the same basic offense that does not specifically address weapons in order to sidestep the statutory exclusions. This would clearly frustrate the legislative intent of the General Assembly's multiple, and increasingly thorough, revisions to the statute. We therefore decline to search for meaning beyond the plain wording of the clause by reading into it exceptions, limitations, or conditions. *People v. Boclair*, 202 Ill. 2d 89, 100 (2002).

¶ 21    The defendant's remaining point on appeal is that he received ineffective assistance from his posttrial appointed counsel at his *Krankel* hearing. Specifically, he

asserts that his posttrial counsel simply adopted and set forth his own *pro se* arguments, which was tantamount to doing nothing to advance his ineffective-assistance-of-trial-counsel claims. The defendant asserts that such inaction "entirely failed to subject the prosecution's case to meaningful adversarial testing" under the standards set by *United States v. Cronic*, 466 U.S. 648, 657 (1984). We disagree with the defendant's contention.

¶ 22    The defendant was granted an evidentiary hearing pursuant to the rule in *People v. Krankel*, 102 Ill. 2d 181 (1984), to evaluate his assertions. Under *Krankel*, a *pro se* posttrial motion alleging ineffective assistance of counsel can trigger a trial court's obligation to appoint new counsel and set the claims for a hearing. See *Krankel*, 102 Ill. 2d at 189. The trial court is not automatically required to appoint new counsel to assist the defendant; rather, the court should first examine the factual basis of the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 77-79 (2003). If the claims indicate that the defendant's trial counsel neglected the case, the trial court must appoint new counsel. *People v. McLaurin*, 2012 IL App (1st) 102943, ¶ 40.

¶ 23    The trial court in the instant case did not examine the basis of the defendant's claims when they were brought to its attention at the sentencing hearing, but instead appointed new counsel and set a hearing on the defendant's motion.[5] At this juncture, the

---

[5]Contrary to the defendant's assertion, the record of the defendant's sentencing hearing does not reflect that the trial court found that the defendant's trial counsel established a sufficient showing of neglect; the court only inquired as to the defendant's desire for new counsel. However, because no *Krankel* inquiry into the defendant's

defendant was entitled to new counsel that would undertake an independent evaluation of his claim and present the matter to the court from a detached, yet adversarial, position. *People v. Jackson*, 131 Ill. App. 3d 128, 139 (1985). As noted in our factual summary, the court heard argument from both the State and the defendant's appointed counsel, and made a factual determination on the merits of the defendant's claims by finding that the defendant did not demonstrate that his trial counsel's performance fell below the *Strickland* standards.

¶ 24 However, the defendant's assertion on appeal is not that the trial court conducted an inadequate inquiry into his posttrial claims, but rather that his posttrial counsel was ineffective in presenting his claims regarding his trial counsel. Claims of ineffective assistance of counsel are generally evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* requires a defendant to show both that (1) his attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance resulted in prejudice to the defendant; the failure to satisfy either element will preclude a finding of ineffective assistance of counsel. *People v. Shaw*, 186 Ill. 2d 301, 332 (1998).

¶ 25 In certain exceptional situations, as the defendant asserts is appropriate in this case, the two-part *Strickland* test need not be applied and prejudice may be presumed.

---

assertions was made at that time, a hearing on the motion was properly set. See *Moore*, 207 Ill. 2d at 79 (finding that the law requires an inquiry into a defendant's posttrial assertions of ineffective assistance of counsel).

When "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659.

¶ 26 First we address the defendant's argument that his claim is properly evaluated under the *Cronic* standard. When distinguishing between the rule of *Strickland* and that of *Cronic*, the differences in evaluating error are not in degree, but in kind. *Bell v. Cone*, 535 U.S. 685, 697 (2002). Examples of failures that meet the *Cronic* standard include employing a trial strategy that concedes a defendant's guilt when the defendant has pled not guilty (see *People v. Hattery*, 109 Ill. 2d 449, 464-65 (1985)), insisting on raising an unavailable defense (see *People v. Kozlowski*, 266 Ill. App. 3d 595 (1994)), and stipulating to the admission of testimony that is inadmissible against a defendant by a supreme court rule (see *People v. Hoerer*, 375 Ill. App. 3d 148, 152 (2007)). Because it is the kind of error and not the egregiousness of the error that guides this evaluation, we conclude that the defendant's posttrial counsel's performance must be evaluated under *Strickland*.

¶ 27 There is a strong presumption that an attorney's choices fall within the wide range of choices that could be considered adequate counsel. *Strickland*, 466 U.S. at 689. The defendant's posttrial counsel presented and argued his claims from the letter, as well as an additional claim regarding evidence of the defendant's lack of intoxication. However, we need not address whether the performance was objectively unreasonable, as we can dispose of the defendant's claim because he suffered no resulting prejudice. *Strickland*, 466 U.S. at 697; *People v. Salas*, 2011 IL App (1st) 091880, ¶ 91.

15

¶ 28    Under the second prong of *Strickland*, the defendant is required to demonstrate that his counsel's representation at the *Krankel* hearing was so prejudicial that there is a reasonable probability that absent the errors, the outcome would have been different. *Strickland*, 466 U.S. at 694.   A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *People v. Patterson*, 2014 IL 115102, ¶ 81.  This requires a substantial, not just conceivable, likelihood of a different result.  *Harrington v. Richter*, 562 U.S. 86 (2011).

¶ 29    Thus, the defendant is required to demonstrate that absent his posttrial counsel's inadequate performance, there was a substantial likelihood that he would have prevailed on his claims regarding his trial counsel.  We note initially that the defendant failed to address this prong in his brief, arguing only that he met his burden under the *Cronic* standard.  However, we will briefly discuss the defendant's failure to meet his burden regarding his ineffective-assistance-of-trial-counsel claims, which in turn establishes that the actions of his posttrial counsel were not prejudicial.

¶ 30    We agree with the trial court's determination that the defendant's claims regarding his trial counsel fail under one or both prongs of *Strickland*.  The majority of the defendant's claims concern his trial attorney's strategy, which enjoys a strong presumption of competency; for example, whether to call certain witnesses on a defendant's behalf are matters of trial strategy that are generally immune from claims of ineffective assistance of counsel.  *People v. English*, 334 Ill. App. 3d 156, 164 (2002). The remainder of the defendant's allegations regarding his trial counsel are either refuted by the record, present general allegations that are not supported by specific information,

16

or fail to demonstrate how he was prejudiced by the alleged failures. The defendant was entitled to professionally competent assistance, not a perfect attorney or successful representation. *Cone*, 535 U.S. at 702.

¶ 31 The defendant did not demonstrate that he received ineffective assistance from his posttrial counsel at his *Krankel* hearing. However, we find that the armed violence statute currently in force prohibits the use of aggravated battery as a predicate offense. Therefore, we vacate the defendant's conviction for armed violence and remand this cause for sentencing on his remaining conviction, aggravated battery while armed with a firearm, a Class X felony, pursuant to section 12-4.2(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12-4.2(a)(1) (West 2010)).

¶ 32 Vacated and remanded with directions.

2014 IL App (5th) 130085

NO. 5-13-0085

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-CF-1007 |
| | ) | |
| JAMES CHERRY, | ) | Honorable |
| | ) | Michael N. Cook, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**          December 10, 2014

_____

**Justices:**          Honorable Thomas M. Welch, J.,

                    Honorable Richard P. Goldenhersh, J., and
                    Honorable Bruce D. Stewart, J.,
                    Concur

_____

**Attorneys**     Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard, Deputy
**for**           Defender, Susan M. Wilham, Assistant Appellate Defender, Office of the State
**Appellant**     Appellate Defender, Fourth Judicial District, 400 West Monroe Street, Suite 303,
                P.O. Box 5240, Springfield, IL 62705-5240

_____

**Attorneys**     Hon. Brendan F. Kelly, State's Attorney, St. Clair County Courthouse, 10 Public
**for**           Square, Belleville, IL 62220
**Appellee**
                Patrick Delfino, Director, Lawrence M. Bauer, Deputy Director, Joan M. Kripke,
                Staff Attorney, State's Attorneys Appellate Prosecutor, Second Judicial District,
                2032 Larkin Avenue, Elgin, IL 60123

_____